IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHRIS GRINDLING, | ) | Civil No. 16-00424 ACK-KJM |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION TO |
| vs. | ) | DENY THE APPLICATION TO |
| | ) | PROCEED IN FORMA |
| MICHEAL DIANA and | ) | PAUPERIS AND TO DISMISS |
| LOT KULUAU, | ) | THE COMPLAINT WITH LEAVE |
| | ) | TO AMEND |
| Defendants. | ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION TO DENY THE APPLICATION TO
PROCEED IN FORMA PAUPERIS AND TO DISMISS THE COMPLAINT
WITH LEAVE TO AMEND

On August 2, 2016, *pro se* Plaintiff Chris Grindling ("Plaintiff"), filed a

Complaint with this Court. *See* ECF No. 1. The Complaint includes a request to

proceed *in forma pauperis* ("IFP"). *Id.* Plaintiff seeks relief for various claims

under the Prison Rape Elimination Act ("PREA") and 42 U.S.C. section 1983

("Section 1983") against Maui Community Correctional Center ("MCCC")

correctional officers Micheal Diana ("Diana") and Lot Kuluau ("Kuluau")

(collectively, "Defendants"). *Id.*

For the reasons that follow, the Court FINDS that Plaintiff's Complaint fails

to state any cognizable legal claims and RECOMMENDS that the District Court

DISMISS Plaintiff's Complaint without prejudice and DENY Plaintiff's IFP

Application.

## BACKGROUND

Although not specified, the events described in the Complaint appear to have

taken place at the MCCC and appear to name MCCC correctional officers as

defendants.  Specifically, the Complaint in a paragraph entitled "Statement of

Jurisdiction" states that "all parties are citizens of the United States residents of

Maui County[,] both defendants are correctional officers and were so employed

and on duty at all times alleged . . . ."  ECF No. 1 at 1.  The Complaint designates

MCCC's address as Defendants' address.  *Id.*  The Complaint does not indicate

when any of the alleged incidents took place.

The Complaint consists of twelve numbered paragraphs from which the

Court can discern five potential claims.  *See* ECF No. 1 at 3, 4.  The first,

contained in paragraphs one through four and paragraphs eight and nine, appear to

generally allege that Diana sexually harassed, and in one instance, fondled the

Plaintiff.  *Id.* at 3.  In support of those claims, Plaintiff alleges that: (1) Diana asked

"about male on male [*sic*] sex in prison and if Plaintiff participated or seen [*sic*] it

occur"; (2) Diana looked at Plaintiff and pretended that he was "sucking on an

invisible [penis] and smile" [*sic*]; (3) Diana came into Plaintiff's cell for a "pat

search" and fondled Plaintiff's penis and rubbed his chest on Plaintiff's back; (4)

2

on several occasions, Diana stared at Plaintiff and poked his fingers in Plaintiff's food; and finally, (5) Diana would "stand behind another ACO or SGT and make gesters [*sic*] poke his finger in his fist childish behavior all day long." *Id.*

The second claim, alleged in paragraph four, is that someone "strip [Plaintiff] for library [*sic*]." *Id.* The Court interprets this claim to mean that officials conducted a strip search of Plaintiff before allowing him to proceed into the library.

The third claim, stated in paragraphs five through seven, generally describes Kuluau's failure to act or respond to Plaintiff's reports of sexual harassment. *Id.* at 3-4.

The fourth claim, contained in paragraph ten, claims that during daily cell searches, on a number of occasions, Diana stole Plaintiff's personal property without writing up property receipts for the confiscated items. *Id.* at 3.

Finally, the fifth claim, stated in paragraph eleven, alleges that Diana "wrote [Plaintiff] up for making sexual proposals to him . . . [but] the misconduct was dismissed." *Id.*

Paragraph twelve is largely incomprehensible, but appears to suggest that Plaintiff was not allowed to file a grievance against Diana after Diana filed a complaint against Plaintiff. *Id.*

The events at issue seem to correspond to an unspecified period of incarceration allegedly occurring before Plaintiff filed his Complaint. Plaintiff requests unspecified compensatory damages and "any other relief he is entitled to." *Id.* at 2.

## DISCUSSION

I. Plaintiff's IFP Application

Plaintiff applied to the Court to proceed *in forma pauperis*. An applicant is entitled to *in forma pauperis* relief when he or she can show that he or she "cannot because of his poverty pay or give security for the costs [of litigation] and still be able to provide himself and dependents with the necessities of life." *Adkins v. E.I. Du Pont De Nemours & Co., Inc.*, 335 U.S. 331, 339 (1948) (internal quotations omitted); *see also United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (stating that the affidavit must "state the facts as to affiant's poverty with some particularity, definiteness and certainty" (internal quotation omitted)). Pursuant to 28 U.S.C. § 1915(a)(1), a court may permit a party to proceed *in forma pauperis* by authorizing a person who submits an affidavit that the party is unable to pay fees, to commence or prosecute a suit without prepaying fees.

When reviewing a motion filed pursuant to 28 U.S.C. § 1915(a), "[t]he only determination to be made by the court . . . is whether the statements in the affidavit satisfy the requirement of poverty." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d

4

1305, 1307 (11th Cir. 2004) (alterations in original) (citation omitted).  "While 28

U.S.C. § 1915(a) does not require a litigant to demonstrate absolute destitution,

*Adkins*, 335 U.S. at 339, the applicant must nonetheless show that he is "unable to

pay such fees or give security therefor."  *Horowitz v. Sulla*, 2016 WL 3264249, at

*1 (D. Haw. June 14, 2016) (citing 28 U.S.C. § 1915(a)).

Here, Plaintiff's IFP Application is not on the court-approved application

form and lacks the information necessary to determine whether Plaintiff has

demonstrated poverty.  Accordingly, the Court RECOMMENDS that the IFP

Application be DENIED without prejudice.

II.  Threshold IFP Screening

Section 1915(a) of Title 28 governs IFP proceedings.  The Court must

subject each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory

screening, and order the dismissal of any claims it finds "frivolous, malicious,

fail[s] to state a claim upon which relief may be granted, or seek[s] monetary relief

from a defendant immune from such relief."  28 U.S.C. § 1915(e)(2)(B); *Lopez v.*

*Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. §

1915(e) "not only permits but requires" the court to *sua sponte* dismiss an *in forma*

*pauperis* complaint that fails to state a claim); *Calhoun v. Stahl*, 254 F.3d 845, 845

(9th Cir. 2001) (*per curiam*) (holding that "the provisions of 28 U.S.C. §

1915(e)(2)(B) are not limited to prisoners").

*Pro se* litigants, like other litigants, must satisfy the requirements of the Federal Rules of Civil Procedure ("FRCP") 8(a)(2), and include in all pleadings a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendants fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

"Despite these requirements, the Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of *pro se* litigants." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

Nevertheless, the Court may dismiss a complaint pursuant to FRCP 12(b)(6) for "failure to state a claim upon which relief can be granted[.]" A Rule 12(b)(6) dismissal is proper when there is either a "'lack of a cognizable legal theory or the absence of sufficient facts alleged.'" *UMG Recordings, Inc. v. Shelter Capital Partners*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). A plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 570); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d

6

1061, 1065 (9th Cir. 2008).  This premise does not apply to legal conclusions.  *See Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556).

III.    Legal Analysis of Plaintiff's Claims

Plaintiff appears to raise: (1) claims pursuant to the PREA; (2) various causes of action pursuant to Section 1983, including violations of due process, a First Amendment retaliation claim, an Eighth Amendment sexual harassment claim, and a Fourth Amendment search and seizure claim; and (3) either a deliberate indifference or negligence claim based on Kuluau's failure to inform prison officials or act upon Plaintiff's complaints against Diana.

For the reasons that follow, the Court RECOMMENDS that the District Court DISMISS the Complaint with leave to amend the Eighth, Fourth, and First

Amendment claims under Section 1983, and any potential claims against Kuluau.

The Court further RECOMMENDS that Plaintiff's due process claim for

confiscation of property and any claims under the PREA be DISMISSED with

prejudice for failure to state a legal claim.

A.     Claims Pursuant to the PREA

Plaintiff appears to allege that Defendants violated his civil rights under the

PREA.  This claim fails because there is no private cause of action available to

Plaintiff under the PREA.

"A private right of action 'to enforce federal law must be created by

Congress.'"  *Hatcher v. Harrington*, 2015 WL 474313, at *4 (D. Haw. Feb. 5,

2015) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).  A person's

"ability to bring a private right of action may be authorized by the explicit statutory

text or, in some instances, may be implied from the statutory text" where "there is

clear evidence" of Congressional intent.  *Nisqually Indian Tribe v. Gregoire,* 623

F.3d 923, 929 (9th Cir. 2010); *see Gonzaga Univ. v. Doe,* 536 U.S. 273, 286

(2002).  The court's role is to "interpret the statute Congress has passed to

determine whether it displays an intent to create not just a private right but also a

private remedy."  *Id.*  Without "specific Congressional intent, no private right of

action exists."  *Id.* ("[C]ourts may not create [a private cause of action], no matter

how desirable that might be as a policy matter, or how compatible [it may be] with the statute.").

Congress enacted the PREA to address the problem of prison rape by: "(1) developing national standards for the detection, prevention, reduction, and punishment of prison rape"; (2) applying such national standards to governmental agencies and departments that maintain correctional facilities; and (3) conditioning eligibility for federal grant money on compliance with such standards.  42 U.S.C. §§ 15602, 15605; *see, e.g., Diamond v. Allen,* 2014 WL 6461730, at *4 (M.D. Ga. Nov. 17, 2014) ; *Holloway v. Dep't of Corr.,* 2013 WL 628648, at *2 (D. Conn. Feb. 20, 2013); *Jones v. Schofield,* 2009 WL 902154, at *2 (M.D. Ga. Mar. 30, 2009) ("A reading of the [PREA] makes clear that its goal is to lessen the occurrence of rapes in prisons across this Country.  Its focus concentrates on statistics, standards, developing information, and regulating federal funding in an effort to lessen prison rapes.").

The PREA creates a scheme which requires institutional compliance with stated Congressional goals in exchange for federal funding.  *See generally*, 42 U.S.C. §§ 15602, 15605.  The PREA does not "explicitly or implicitly suggest[] that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act."  *Hatcher*, 2015 WL 474313, at *5; *see Amaker v. Fischer,* 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014).  "Nor

does the PREA's language, structure, context, or legislative history suggest that Congress intended to create a private remedy for noncompliance with the PREA." *Hatcher*, 2015 WL 474313, at *5*; see* 42 U.S.C. § 15607(e) (explicitly directing the Attorney General to enforce compliance with the PREA); *see also Alexander*, 532 U.S. at 286 (explaining that absent Congressional intent "to create not just a private right but also a private remedy . . . no private right of action exists."). Significantly, "every court to address the issue has determined that PREA cannot support such a cause of action by an inmate." *Amaker,* 2014 WL 4772202, at *14.

This Court, therefore, finds that there is no private cause of action available to vindicate violations of the PREA. Plaintiff's claims, as they allege violations of the PREA, fail to state claims for relief. *See* 28 U.S.C. §§ 1915(e)(2) & 1915A. Leave to amend these claims arising under the PREA is futile. The Court thus RECOMMENDS that these claims be DISMISSED with prejudice.

B.  Claims Pursuant to Section 1983

"To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Hydrick v. Hunter,* 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds,* 556 U.S. 1256 (2009); 42 U.S.C. § 1983.

Read as a whole and liberally construed, Plaintiff's Complaint in its present form fails to state a claim for violations of his civil rights under Section 1983. Although Plaintiff's claims facially satisfy the requirement that the conduct was "committed by persons acting under color of state law," many of the claims fail to allege facts sufficient to indicate that "the conduct deprived the [P]laintiff of a federal constitutional or statutory right" because they lack dates and sufficient factual support for the alleged occurrences. *Hydrick,* 500 F.3d at 987. Each of Plaintiff's alleged civil rights violations are discussed below.

### 1.   Eighth Amendment Sexual Harassment Claims

Although Plaintiff does not specifically assert an Eighth Amendment claim, Plaintiff's allegations suggest a possible sexual harassment or sexual assault claim in violation of the Eighth Amendment. As noted above, Plaintiff claims that: (1) Diana asked "about male on male [*sic*] sex in prison and if Plaintiff participated or seen [*sic*] it occur"; (2) Diana looked at Plaintiff and pretended that he was "sucking on an invisible [penis] and smile" [*sic*]; (3) Diana came into Plaintiff's cell for a "pat search" and fondled Plaintiff's penis and rubbed his chest on Plaintiff's back; (4) on several occasions, Diana stared at Plaintiff and poked his fingers in [Plaintiff's] food; and (5) Diana would "stand behind another ACO or SGT and make gesters [*sic*] poke his finger in his fist childish behavior all day long." *See* ECF No. 1 at 3, 4. While the conduct Plaintiff alleges is inappropriate

11

and unprofessional, for the reasons that follow, the facts as alleged do not constitute an Eighth Amendment violation.

"The Eighth Amendment prohibits cruel and unusual punishment in penal institutions. Whether a specific act constitutes cruel and unusual punishment is measured by 'the evolving standards of decency that mark the progress of a maturing society.'" *Wood v. Beauclair,* 692 F.3d 1041, 1045–46 (9th Cir. 2012) (quoting *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)). In evaluating a prisoner's claim, courts must consider whether "the officials act[ed] with a sufficiently culpable state of mind and if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson,* 503 U.S. at 8 (citation and internal quotation marks omitted); *accord Wood,* 692 F.3d at 1046. Sexual harassment that includes physical assault is a clear violation of the Eighth Amendment. *See Schwenk v. Hartford,* 204 F.3d 1187, 1196–97 (9th Cir. 2000); *accord Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir. 1997) ("[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is 'simply not part of the penalty that criminal offenders pay for their offenses against society.'") (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

Despite a recognized avenue of Eighth Amendment relief for Section 1983 institutional sexual harassment claims, courts generally differentiate between sexual harassment claims involving physical assault and claims involving only

verbal harassment.  *See Austin v. Terhune,* 367 F.3d 1167, 1171–72 (9th Cir. 2004) ("[T]he Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment.") (citing *Blueford v. Prunty,* 108 F.3d 251, 254–55 (9th Cir. 1997) (finding guard entitled to qualified immunity for "vulgar same-sex trash talk" with inmates)); *Somers v. Thurman,* 109 F.3d 614, 624 (9th Cir. 1997) (finding qualified immunity applied to female correctional officers who allegedly made improper statements about plaintiff while he showered).

In *Austin,* the Ninth Circuit upheld the district court's dismissal of an Eighth Amendment claim as "not sufficiently serious to constitute an Eighth Amendment violation," because the guard was behind a glass-enclosed control booth when he exposed his penis and made lewd comments, never touched the inmate, and the isolated incident lasted only 30–40 seconds.  367 F.3d at 1171–72; *accord Somers,* 109 F.3d at 624 ("To hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd."); *see also Jonas v. Idaho,* 2006 WL 3197158, at *3 (D. Idaho 2006) (finding prison physician's allegedly obscene gesture during inmate's medical appointment insufficient to state an Eighth Amendment claim).

Even when sexual harassment in prison involves brief inappropriate contact, the Ninth Circuit has generally declined to find an Eighth Amendment violation for

13

such fleeting encounters.  *See Watison v. Carter,* 668 F.3d 1108, 1112–14 (9th Cir.

2012) (finding no Eighth Amendment violation against a guard who allegedly

rubbed his thigh against a prisoner using the toilet, smiled, then left the cell

laughing); *see also Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998)

(affirming summary judgment for defendant on Eighth Amendment claim that

alleged a prison employee briefly touched ("mere seconds") an inmate's buttocks

during "horseplay," even though such action, unaccompanied by sexual comments,

was an improper sexual advance that "embarrassed" plaintiff); *cf., Smith v. L.A.

Cnty.,* 2010 WL 2569232, at *5 (C.D. Cal. 2010) (finding that pretrial detainee

failed to state due process claim, or unreasonable search claim, based on

allegations that guard pulled inmate's boxers to look at his buttocks, inserted his

hand between inmate's buttocks, and cupped inmate's genitals during search),

*adopted by* 2010 WL 2572570 (C.D. Cal. 2010), *aff'd,* 452 F. App'x 768 (9th Cir.

2011).

 Here, as in *Austin*, Plaintiff's description of the various events, including

allegations that Diana poked his fingers in Plaintiff's food, fondled Plaintiff's penis

and rubbed his chest on Plaintiff's back during pat searches, do not, in their present

form, sufficiently state an Eighth Amendment violation.  The offending conduct,

except for the claims that Diana fondled Plaintiff's penis during a patdown or

rubbed Plaintiff's back during a search, largely appear to amount to occasional

taunting.  As to the fondling and rubbing claims, though, any alleged physical

contact, as presently alleged, lacks sufficient factual support to properly state a

claim.  Plaintiff does not allege specific locations, dates, times, or duration of any

episodes of physical harm.  Plaintiff also does not allege that the physical touching

was not related to legitimate correctional activity, or that it was an intentional

sexual contact sufficient to constitute an actionable assault.  *See Austin*, 367 F.3d at

1171–72; *accord Somers*, 109 F.3d at 624; *see also Watison,* 668 F.3d at 1112–14.

   Although Diana's comments and brief contact with Plaintiff was

unwelcomed, without more information, including the dates the alleged incidents

took place, as well as their duration, and frequency, the acts described in

paragraphs one through four and eight, fail to state an Eighth Amendment claim

warranting relief under Section 1983.  The Court therefore RECOMMENDS that

this claim be DISMISSED with leave to amend.

### 2.   Due Process Claim: Confiscation of Personal Items

Plaintiff also suggests a possible due process claim arising under Section

1983 in paragraph ten.  *See* ECF No. 1 at 4.  Plaintiff claims that during Diana's

daily cell searches, Diana stole "eye glasses shoes head phones religious books

legal case files [*sic*]."  *Id*. at 4.  Plaintiff alleges that Diana claimed that the items

were contraband, and that Diana failed to write up any property receipts for the

items once he confiscated them from Plaintiff.  *Id.*

Ordinarily, due process of law requires notice and an opportunity for a hearing prior to the deprivation of a significant property interest. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978). Given the impracticalities of enforcing "pre-deprivation" procedures in alleged random and unauthorized seizures of property, however, courts have consistently held that unauthorized intentional or negligent "deprivations of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (finding no claim under § 1983 for intentional destruction of a prisoner's property); *see Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (finding no claim under § 1983 when state employee negligently lost prisoner's property), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Thus, the availability of a reasonable state post-deprivation remedy, such as a state tort action, precludes relief under Section 1983 if the state remedy provides adequate due process. *See Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (holding that either a state statutory provision for post-deprivation hearing, or the common law tort remedy for erroneous deprivation satisfies due process when the state cannot foresee, and therefore provide a meaningful hearing

prior to deprivation of property); *King v. Massarweh*, 782 F.2d 825, 826 (9th Cir. 1986) (same).

Hawaii Revised Statutes section 662-2 provides that public employees are liable for torts in the same manner and to the same degree as private individuals under similar circumstances. "Because Hawaii expressly waives its immunity for its employees' torts, section 662-2 provides an adequate post-deprivation remedy for an inmate's alleged loss of property." *Austin v. Van Winkle,* Civ. No. 11-00691 SOM-BMK (D. Haw. 2011).

Grindling alleges that Diana confiscated his personal property without warning during "cell searches." He further alleges that Diana "never wrote up any property receipts" for the confiscated property. As noted above, however, allegations of random and potentially unauthorized deprivations of personal property do not state violations of federal constitutional rights. Although such unauthorized deprivations of personal property may amount to state law violations, they do not constitute federal due process violations. Consequently, Grindling's allegations regarding the confiscation of his personal property fail to state a claim for relief under Section 1983. Because this claim is deficient as a matter of law, and leave to amend would be futile, the Court RECOMMENDS that this claim be DISMISSED with prejudice.

3.   Fourth Amendment Claim

Plaintiff appears to allege a Fourth Amendment violation because he was "strip[ped] . . . for [the] library," or what this Court interprets as being strip-searched.

The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures."  This right extends to incarcerated prisoners.  The reasonableness of a particular search, however, is analyzed within the prison context.  In *Bell v. Wolfish,* 441 U.S. 520, 558 (1979), the Supreme Court set forth a balancing test for determining the reasonableness of a search in any given situation:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the *scope* of the particular intrusion, the *manner* in which it is conducted, the *justification* for initiating it, and the *place* in which it is conducted.

*Id.* at 559 (emphasis added).  The Supreme Court in *Bell* recognized that not all strip search procedures are reasonable.  "Some may be excessive, vindictive, harassing, or unrelated to any legitimate penological interest."  *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988).

18

Plaintiff's bare recital that he was "strip[ped] for [the] library" does not provide the Court with enough facts to determine the date, scope, manner, justification, or place in which the search was conducted.  Because there are not sufficient facts to state a plausible Fourth Amendment claim, the Court RECOMMENDS that this claim be DISMISSED with leave to amend.

### 4.   First Amendment Retaliation Claim

Plaintiff claims that Diana "wrote [him] up for making sexual proposals [but] the misconduct was dismissed."  *See* ECF No. 1 at 4.  Plaintiff appears to allege that Diana frivolously filed misconduct charges in retaliation for Plaintiff reporting a sexual harassment grievance against Diana.  For the reasons set forth below, Plaintiff fails to allege facts sufficient to state a First Amendment retaliation claim.

Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so.  *See Brodheim v. Cry,* 584 F.3d 1262, 1269 (9th Cir. 2009).  A retaliation claim has five elements ("retaliation test").  *Id.*  First, the plaintiff must allege that the conduct causing retaliation is protected.  *Id.*  The filing of an inmate grievance is protected conduct.  *See Rhodes v. Robinson,* 408 F.3d 559, 568 (9th Cir. 2005).  Second, the plaintiff must claim the defendant took adverse action against the plaintiff.  *Id.* at 567.  The adverse action need not be an independent constitutional violation.  *See Pratt v. Rowland,*

65 F.3d 802, 806 (9th Cir. 1995) ("[T]he mere threat of harm can be an adverse

action . . ."); *Brodheim,* 584 F.3d at 1270.  Third, the plaintiff must allege a causal

connection between the adverse action and the protected conduct.  Direct evidence

of retaliatory intent rarely can be pleaded in a complaint.  Instead, an allegation of

a chronology of events from which retaliation can be inferred is sufficient to

survive dismissal.  *See Pratt,* 65 F.3d at 808 ("timing can properly be considered as

circumstantial evidence of retaliatory intent"); *Murphy v. Lane,* 833 F.2d 106, 108–

09 (7th Cir. 1987).  Fourth, the plaintiff must allege that the "official's acts would

chill or silence a person of ordinary firmness from future First Amendment

activities." *Robinson,* 408 F.3d at 568 (internal quotation marks and emphasis

omitted).  "[A] plaintiff who fails to allege a chilling effect may still state a claim if

he alleges he suffered some other harm," *Brodheim,* 584 F.3d at 1269, that is

"more than minimal." *Robinson,* 408 F.3d at 568 n.11.  That the retaliatory

conduct did not act to chill the plaintiff from suing the alleged retaliator does not

defeat the retaliation claim at the motion to dismiss stage.  *Id.* at 569.  Fifth, the

plaintiff must allege "that the prison authorities' retaliatory action did not advance

legitimate goals of the correctional institution . . . ." *Rizzo v. Dawson,* 778 F.2d

527, 532 (9th Cir. 1985).  A plaintiff can successfully plead this element by

alleging, in addition to a retaliatory motive, that the defendant's actions were

arbitrary and capricious.  *Id.*  A plaintiff can also establish this element by showing

20

that the actions were "unnecessary to the maintenance of order in the institution." *Franklin v. Murphy,* 745 F.2d 1221, 1230 (9th Cir. 1984).

As required by the first element, Plaintiff alleges that he engaged in a protected action by filing a grievance against Diana. As required by the second element, Plaintiff alleges that Diana took adverse actions against him, by filing a presumably false disciplinary charge, "poking holes in Plaintiff's food," and staring at Plaintiff while Diana poked his finger through his fist. Plaintiff fails to allege, as required by the third element of the retaliation test, a connection between the protected conduct and the adverse actions. Plaintiff also does not indicate the time period any of these actions took place and Plaintiff does not assert that these adverse actions took place shortly after, or in retaliation for, Plaintiff's filing of grievances against Diana. Plaintiff, in addition, does not allege that the retaliatory actions would have chilled or silenced a person of ordinary firmness, as required by the fourth element. The Court, however, finds that the filing of a false disciplinary charge against Plaintiff alleges "more than minimal" harm sufficient to satisfy the fourth prong of the test. Thus, Plaintiff sufficiently alleges a harm that would have a "chilling effect" on his protected activity. Plaintiff also satisfies the fifth requirement that there was not a legitimate penological reason for the claimed adverse actions. Plaintiff appears to allege that Diana frivolously filed claims against him and that the claims against Plaintiff were ultimately dismissed.

As noted above, Plaintiff fails to sufficiently allege a connection between Plaintiff's protected actions and Diana's adverse actions against him.  Accordingly, Plaintiff has not sufficiently pleaded a First Amendment retaliation claim against Diana.  The Court therefore RECOMMENDS that Plaintiff's retaliation claim be DISMISSED with leave to amend.

C.  Claims Against Kuluau

Paragraph five, six, seven, and twelve of Plaintiff's Complaint generally claim that Plaintiff reported the incidents of sexual harassment involving Diana to Kuluau, but Kuluau allegedly "did nothing but cover [it] up."  ECF No. 1 at 3.  Plaintiff also states that the "PREA requires Diana be separated from [Plaintiff but] this was not done [*sic*] Lt. Kuluau did not contact the police, did not ask any questions, ask witnesses, or investigate . . . of course [Plaintiff] was not (illegible) to grievance this or any other issue."   ECF No. 1 at 3, 4.

To raise a claim against Kuluau for violating Plaintiff's constitutional rights, Plaintiff must establish "the defendant's personal involvement in a constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation."  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  Thus, a plaintiff may not sue an official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Rather, a plaintiff must plead that a defendant,

through his own acts, violated a plaintiff's constitutional rights.  *Id.*  Negligence alone does not amount to a violation of federal or constitutional rights, unless the failure to act amounts to "deliberate indifference" such that the official "disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837 (stating that "deliberate indifference describes a state of mind more blameworthy than negligence.")

It is unclear what specific claims Plaintiff is alleging against Kuluau. Plaintiff's naked assertions against Kuluau do not satisfy a claim that Kaluau personally violated Plaintiff's rights such that Kuluau's failure to act disregarded "an excessive risk to [Plaintiff's] health or safety."  *Id*. at 837.  If Plaintiff is alleging that Kuluau personally violated Plaintiff's constitutional rights by covering up Diana's harassment, the allegations by themselves, fail to detail what steps Kuluau affirmatively took to "cover up" the harassment.  If, however, Plaintiff is alleging that Kuluau violated the agency's own established grievance process, without more, including the period of time that elapsed between Plaintiff's "report" and the alleged lack of response from Kuluau, it is unclear whether: (1) there was a violation at all; (2) Kuluau deliberately ignored the complaint; or (3) Kuluau's actions were more than simply negligent.

The Court notes that even if Kuluau's failure to separate Diana from Plaintiff *may* have violated PREA guidelines as Plaintiff suggests, the Court already determined that the PREA does not confer a private right of action.

There are not enough facts to state a plausible claim against Kuluau. The Court therefore RECOMMENDS that the claim against Kuluau be DISMISSED with leave to amend. If Plaintiff chooses to amend his complaint to sufficiently state a claim against Kuluau, he must allege facts that demonstrate more than negligence in Kuluau's failure to act or respond. Alternatively, the Plaintiff must otherwise state some direct harm involving the acts of Kuluau himself that violated Plaintiff's rights.

### D.   Exhaustion of PLRA against MCCC Officials and Kuluau

Plaintiff also appears to allege that MCCC officials or Kuluau failed to properly process Plaintiff's grievance against Diana. Plaintiff claims that he reported his sexual harassment claim to Kuluau, but Kuluau "did nothing but cover [it] up . . . [and o]f course [Plaintiff] was not (illegible) to grievance this or any other issue." *See* ECF No. 1 at 3, 4.

Without more information, it is unclear based on Plaintiff's statements whether Plaintiff filed a grievance in conformance with the Department of Public Safety's ("DPS") formal grievance procedure, to which he is bound during his period of incarceration pursuant to the Prison Litigation Relief Act ("PLRA"), or

24

whether he simply expressed dissatisfaction.  *See* DPS Policies and Procedures Manual (1992) § 493.12.03 (4.0) (defining the boundaries of proper exhaustion of remedies).

The PLRA demands both Plaintiff's and the MCCC's compliance with the DPS's established grievance process during the period of Plaintiff's incarceration. The Plaintiff's statement fails to provide sufficient facts to determine whether MCCC officials failed to adhere to DPS's policy.  Accordingly, the Court cannot determine if MCCC officials denied Plaintiff sufficient procedural safeguards through the administrative process necessary to establish a claim.  If Plaintiff chooses to raise this claim in any amended pleadings, he must address the specific steps he took as prescribed by the grievance policy and detail the alleged deficiencies in the prison's response.  Only then can the Court properly assess whether there is a viable claim.

## IV.  Recommendations

The Court RECOMMENDS that any claims raised under the PREA and the due process claim concerning confiscation of items be DISMISSED with prejudice.  The Court further RECOMMENDS that the remaining claims in Plaintiff's Complaint be DISMISSED without prejudice, with leave to amend to cure the deficiencies identified above.

If Plaintiff chooses to file an amended complaint, he must write short, plain statements informing the Court: (1) the constitutional or statutory right Plaintiff believes was violated; (2) the specific basis of this Court's jurisdiction; (3) the name(s) of the defendant(s) who allegedly violated that right; (4) exactly what each alleged defendant did or failed to do; (5) how the action or inaction of each defendant is connected to the violation of Plaintiff's rights; (6) what specific injury the Plaintiff suffered because of any defendant's conduct; (7) factual allegations supporting Plaintiff's claims, including the dates when the alleged incidents took place; and (8) the location where the alleged incidents took place.

To cure the deficiencies, Plaintiff must repeat this process for each person or entity that he names as a defendant.  If Plaintiff fails to affirmatively link the conduct of each named defendant with the specific injury suffered, the allegation against that defendant will be dismissed for failure to state a claim.  Plaintiff must clearly designate on the face of any amended or new complaint that it is a "First Amended Complaint."  An amended complaint generally supersedes a prior complaint, and must be complete in itself without reference to the prior superseded pleading.  *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987*), overruled in part by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (en banc).  Claims dismissed without prejudice that are not re-alleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey*, 693 F.3d at 928 (stating that claims

dismissed with prejudice need not be re-pled in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not re-pled). The amended complaint may not incorporate any part of the original complaint, but rather, any specific allegations must be retyped or rewritten in their entirety. Plaintiff may include only one claim per count. Failure to file an amended complaint by October 24, 2016 will result in automatic dismissal.

<u>CONCLUSION</u>

Based on the foregoing, the Court RECOMMENDS that the IFP Application be DENIED. The Court further RECOMMENDS that the Complaint be DISMISSED with leave to amend, except for claims raised pursuant to the PREA and any due process claim related to the confiscation of items, which the Court RECOMMENDS be dismissed with prejudice.

If Plaintiff decides to proceed with this action, Plaintiff must file an amended complaint addressing the deficiencies identified above no later than October 24, 2016. He must also either: (1) remit the $400 filing fee to the Clerk of Court; or (2) submit an IFP application on the appropriate form.

The Clerk of Court is instructed to send Plaintiff a copy of the Court's IFP application along with this Order.

Failure to file an amended complaint by October 24, 2016 will result in automatic dismissal of this action without prejudice. Moreover, if Plaintiff fails to

either pay the filing fee or submit an appropriate IFP application when filing an amended complaint, the action will likewise be dismissed without prejudice. *See Olivares v. Marshall*, 59 F.3d 109, 112 (9th Cir. 1995) (indicating that the district court has authority to dismiss a complaint for failure to pay partial filing fee); *In re Perroton*, 958 F.2d 889, 896 (9th Cir. 1992) (affirming dismissal of appeal of pro se litigant for failure to pay required filing fees).

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawai`i, September 9, 2016.



/S/ Kenneth J. Mansfield
Kenneth J. Mansfield
United States Magistrate Judge

*Grindling v. Diana, Kuluau*; CV 16-00424 ACK-KJM; Findings and Recommendation to Deny IFP and to Dismiss the Complaint with Leave to Amend.